MIDDLESEX WATER COMPANY, PROSECUTOR, v. BOARD OF PUBLIC UTILITY COMMISSIONERS OF NEW JERSEY, DEFENDANT.

Argued May 30, 1927—Decided January 19, 1928.

Before Justices TRENCHARD, KALISCH and KATZENBACH.

For the prosecutor, *Frank Bergen* and *Robert H. McCarter*.

For the defendant, *Thomas Brown*.

PER CURIAM.

This writ brings up for review the order of the board of public utility commissioners dated December 1st, 1926, wherein the board ordered—

"1. That the said Middlesex Water Company be and is hereby authorized to recoup from rates an amount of $42,711 representing deficits below a reasonable return during the interval from April 1st, 1924, to December 31st, 1926, including therein audited or paid bills for rate case expenses to December 31st, 1926.

"2. That said deficit of $42,711 may be amortized by a surcharge of two and one-half per cent. to be added to the schedule of rates of the Middlesex Water Company, as modified by this order until such a time as the excess revenue produced by such surcharge shall have equalled said sum of $42,711; that said surcharge shall be effective on all bills for water sold on or after January 1st, 1927, and shall be imposed and charged until said deficit shall have been amortized and no longer."

At the outset we remark that the motion made by the defendant to strike out depositions taken by the prosecutor is denied for reasons given in another case between the same parties at this present term.

The controversy in the present case arises out of the following circumstances (briefly stated):

Up to 1923 the board allowed the company substantially all increase in rates applied for. On December 10th, 1923, the company filed a third application for a substantial increase calculated to produce a return of $181.280 on a claimed value of $2,500,000. The board fixed a value of $1,736,205 as of December 31st, 1923, together with an estimated cost of the extension from Oak Tree to Woodbridge, and it set forth a schedule which in its opinion would produce the return of seven and three-tenths per cent. from rates to be effective April 1st, 1924, subject to a ten per cent. discount until the extension from Oak Tree to Woodbridge was placed in service, the service being admittedly inadequate. The company being dissatisfied with that order obtained an injunction out of the United States District Court against the board in enforcing its schedule of rates. The court held that the value of the company's property as of the date fixed by the board was not less than $2,500,000. Thereupon the company, on January 1st, 1926, put into effect its schedule of rates as originally filed with the board, and the board took an appeal to the United States Supreme Court from the order of the District Court. In that situation the board instituted proceedings upon due notice to fix a reasonable *ad interim* schedule of rates following the District Court's decision. It began with the value of $2,500,000 as of January 1st, 1924, and added thereto book additions which produced a value of $2,556,580 for nine months of 1924, on the basis of which, based on a seven and three-tenths return, the board found that the company experienced a deficit in its income of $78,068 for 1924, and, by like calculations, a deficit for 1925 of $78,648, and in 1926 an excess of $123,105, which left a deficit of $33,611. The board allowed certain legal and rate case expenses and found a total deficit of $42,711, which it

amortized over a period of three years on a yearly surcharge basis.

The position of the company is stated in its brief, broadly, thus:

"The prosecutor is entitled to recover its losses, caused by the defendant, and costs. This is not and cannot be disputed (citing cases). The only question is this: What is the amount? * * * The company claims that its losses and cost of hearings and litigation amount to $263,300.96, without interest."

Now, the company has not made it to appear that that is so. On the contrary, we find that the board's calculation of a total deficit of $42,711 is reasonably supported by the evidence. It finds support in the testimony and computations of the chief engineer and deputy chief engineer of the board. Both were duly qualified by education and experience and knowledge of the affairs of the company. By somewhat different methods of calculation both reach the same result. Both started with the base value fixed by the federal court, $2,500,000. Considering their testimony in the light of the exhibits to which they referred, it reasonably appears that the additions thereto, less the depreciation set up by the company $21,486.06, showed an increase in value of $69,044 for twelve months of 1924, and by the same method of computation for the years 1925 and 1926 showed a value of $2,632,244 as of December 31st, 1925, and a value as of June 30th, 1926, of $2,663,469. It further appears that these values were taken as the basis of the computations of the different years, and that the deficits are the differences between a seven and three-tenths per cent. return on the value fixed by the federal court with additions to date, and the income actually received, and that showed a deficit for the last nine months of 1924 of $77,334, and for the year 1925 as adjusted, $76,257. The testimony further supports the proposition that the excess for full year of 1926 was $136,567, and that left a deficit of $17,024. It further appeared from such testimony that the rate case expenses were $20,350, and that the company had already paid out of its expense account

$11,250, leaving a deficit on legal expenses of $9,100, and the total to be amortized from January 1st, 1927, $26,124. From such testimony it appears that the surplus for the first nine months of 1926 would have been $102,336, and this would increase the total amount to be amortized to $60,355. The board, however, computed the deficits to April 1st, 1927, amounting to $33,611, and added thereto unpaid legal expenses amounting to $9,100, making a total amount to be amortized of $42,711, and requiring a surcharge of two and one-half per cent. to be made in the bills which would produce about $14,000 per year and take three years to amortize the full amount of the deficit.

The company complains that the foregoing treatment of the controversy ignores "overheads" and "going-concern value." We do not think so. The computation starts with the valuation of $2,500,000 fixed by the federal court and the valuation used for computation included overheads and going-concern value, and it should not be charged a second time.

The company also complains that the board did not allow deficits from January 1st to April, 1924. We think there is no merit in that complaint. The board's schedule of rates did not go into effect until April 1st, 1924, and under *Acquackanonk Water Co.* v. *Board of Public Utility Commissioners,* 1 *N. J. Mis. R.* 575; *affirmed,* 100 *N. J. L.* 169, the company is not entitled to such alleged deficits.

The company also argues that "the consumers have had the full value of the service, and they should pay at least the amount that the defendant [board] said the service was worth, *with interest,* on the unpaid balance from the time when payment should have been made until it shall be made," and says that "we think the prosecutor [company] is entitled to interest on the unpaid balance of its earnings."

But in the circumstances of the present case we find no reason to disturb the order of the board because of its failure to thus include interest in its calculation. *Indiana Bell Telephone Co.* v. *Public Service Commissioners,* 300 *Fed. Rep.* 203.

The order under review will be affirmed, with costs.